Beiderwieden Funeral Home, Inc. v. Commissioner.
Beiderwieden Funeral Home, Inc. v. Commissioner
Docket No. 14753.
United States Tax Court
1949 Tax Ct. Memo LEXIS 157; 8 T.C.M. (CCH) 573; T.C.M. (RIA) 49147; June 13, 1949
*157 For the taxable years petitioner compensated its two principal officers under a salary and bonus arrangement established many years prior thereto. Respondent determined that their compensation thereunder was excessive and unreasonable. Held, the compensation paid during each of the taxable years was reasonable for the personal services actually rendered. In determining its depreciation deduction for each of the taxable years petitioner estimated the useful life of its funeral home on Chippewa Street at 33 1/3 years. Respondent determined the useful life to be 50 years. Held, the useful life of petitioner's building is 33 1/3 years. Don O. Russell, Esq., 706 Chestnut St., St. Louis, Mo., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. ARNOLD
Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves deficiencies in income, declared value excessprofits, and excess profits taxes in amounts and for the years as follows: Declared Value
Income
Excess
Excess
Year
Tax
Profits Tax
Profits Tax
1941
$656.02
$ 700.09
1942
$147.70
6,634.67
1943
895.60
15,085.01
Two issues are presented: (1) whether the salaries and bonuses paid each year to the two principal officers were reasonable compensation for the personal services actually rendered; and (2) whether excessive depreciation on a mortuary building was claimed during each of the taxable years. The other issue raised by the pleadings was abandoned at the hearing. Respondent's determination of overassessments in petitioner's income tax liability for each of the years 1942 and 1943 confers no jurisdiction upon this Court (Section 272, Internal Revenue Code) and that portion of petitioner's appeal which relates *159 to these overassessments is hereby dismissed. Findings of Fact Petitioner, a Missouri corporation organized in 1931, is engaged in the undertaking business in St. Louis, Missouri. During the taxable years it operated a funeral home at 1936 St. Louis Avenue and one at 3620 Chippewa Street. It filed its income tax returns for the taxable years on the accrual basis with the collector of internal revenue for the first district of Missouri. Petitioner's authorized capital was $125,000, consisting of 1,250 shares of common stock, par value $100 per share. During the taxable years petitioner had 1,231 shares issued and outstanding. The stockholders were: Theodore W. Beiderwieden and Emily Beiderwieden, husband and wife, with right to survivorship, 1,023 shares; and Lawrence J. Rupprecht and Verna L. Rupprecht, husband and wife, with right to survivorship, 208 shares. In or about November, 1943 the Rupprechts acquired 100 shares from the Beiderwiedens. During the taxable years the officers of petitioner were: Theodore W. Beiderwieden, president; Emily Beiderwieden, vice-president; Lawrence J. Rupprecht, treasurer; and Verna L. Rupprecht, secretary. Theodore W. Beiderwieden was a *160 licensed embalmer. He started to work in the funeral business with his father in 1894. He continued in the funeral business until his death in May, 1947. He was in charge of the mortuary on St. Louis Avenue. Lawrence J. Rupprecht had approximately 25 years of practical business experience before entering the funeral business, including banking, insurance, real estate, automobile manufacturing, telephone company, hardware, accounting, and as an officer of a planing mill firm. He was also a licensed attorney. Rupprecht operated the mortuary on Chippewa Street. Emily Beiderwieden and Verna L. Rupprecht assisted their husbands materially in conducting the funeral homes. They were experienced in many aspects of the business and were able to take over when their husbands were conducting funerals, or at a residence or cemetery making funeral arrangements. Neither of the wives received any salary for the services rendered the petitioner. In September, 1931 the petitioner fixed the salaries of its president and treasurer at $600 and $300 per month, respectively. In 1932 and 1933 increases in their salaries were considered but no change was made. The minutes of a directors' meeting on *161 October 2, 1933, read in part as follows: "Officers' salaries for the year 1934 were next considered, whereupon it was RESOLVED: That the salary of the President be $750.00 per month, and the Treasurer $450.00 per month, and as a further incentive and recompense for results as would be evidenced by the amount of sales, a bonus of 10% of the amount of Gross Sales in excess of $100,000.00 for the year ending December 31, 1934 shall be paid to each of the said President and Treasurer." This salary and bonus arrangement continued in effect at all times material hereto, except that the treasurer's base salary was increased in October, 1941 to $600 per month, effective January 1, 1942. At the time the bonus arrangement was authorized in 1933, petitioner's gross sales were less than $100,000, namely, $93,309.45. For the years 1932 through 1943 petitioner's number of funerals, gross sales, gross profits on sales, net income before officers' compensation and Federal income taxes, salaries and bonuses to Beiderwieden and Rupprecht, salaries other then officers, and dividends paid were as follows: Net Income before
Number of
Officers' compensa-
Funeral
Gross
Gross Profit
tion and Federal
Year
Cases
Sales
on Sales
Income Taxes
1932
249
$ 93,309.45
$ 52,351.56
$15,441.57
1933
249
104,308.18
60,946.93
23,166.87
1934
258
101,228.52
61,312.87
21,174.97
1935
259
108,059.69
79,794.03
34,140.51
1936
295
123,361.63
94,749.15
29,921.38
1937
275
117,737.63
90,011.56
26,948.12
1938
255
114,928.96
85,551.78
21,091.84
1939
310
136,936.36
104,461.43
35,240.99
1940
303
132,535.05
102,084.50
32,357.20
1941
292
135,015.79
103,748.26
34,712.21
1942
292
146,081.31
111,833.68
40,197.46
*162 Salaries and Bonuses
Salaries
Dividends Paid
to Officers
Other Than
Total
Amount
Year
Beiderwieden
Rupprecht
Total
Officers
Amount
Per Share
1932
$ 7,200.00
$ 3,600.00
$10,800.00
$14,816.00
$ $ 1933
7,200.00
3,600.00
10,800.00
14,391.80
1934
9,122.85
5,522.85
14,645.70
15,477.05
1935
9,805.97
6,205.97
16,011.94
15,403.31
1936
11,336.76
7,736.16
19,072.32
16,542.44
13,541.00
11.00
1937
10,773.76
7,173.76
17,947.52
17,967.20
3,077.50
2.50
1938
10,488.70
6,888.70
17,377.40
19,915.71
3,077.50
2.50
1939
12,689.00
9,089.00
21,778.00
21,068.36
9,848.00
8.00
1940
12,209.00
8,609.00
20,818.00
21,979.87
8,617.00
7.00
1941
12,499.73
8,899.73
21,399.46
21,875.41
8,617.00
7.00
1942
13,599.14
11,799.14
25,398.28
22,947.73
9,848.00
8.00
1943
16,697.06
14,897.06
31,594.12
22,350.51
12,310.00
10.00
The table which follows shows the amounts deducted by petitioner for each of the taxable years as compensation of its officers and the amounts allowed and disallowed by the respondent: 1941
Salary
Bonus
Total
Allowed
Disallowed
Beiderwieden
$9,000
$3,499.73
$12,499.73
$11,000
$1,499.73
Rupprecht
5,400
3,499.73
8,899.73
7,500
1,399.73
1942
Beiderwieden
9,000
4,599.14
13,599.14
11,000
2,599.14
Rupprecht
7,200
4,599.14
11,799.14
7,500
4,299.14
1943
Beiderwieden
9,000
7,697.06
16,697.06
11,000
5,697.06
Rupprecht
7,200
7,697.06
14,897.06
7,500
7,397.06
*163 Beiderwieden and Rupprecht were personally responsible for the successful operation of petitioner's business. They handled its management and administrative problems. They employed and trained the personnel. They handled all purchases of caskets, vaults, burial garments, embalming supplies, and other funeral merchandise. They fixed the prices on all sales, no such authority being delegated to subordinates. They were responsible for the good operating condition of all equipment and facilities. They were in sole charge of credits and as a result of their efforts petitioner had practically no bad accounts. Their personal associations, acquaintances, and contacts, and that of their wives, were important contributing factors to petitioner's success in the highly competitive business in which it was engaged. They handled the innumerable details in connection with the preparation for and the conduct of the funeral. Their personal services were sought by the families of the deceased. During the war and the taxable years, increased responsibilities were assumed by Beiderwieden and Rupprecht as funeral materials and supplies of a critical nature were difficult to obtain, and employees taken *164 for the armed forces could not be replaced. They worked long hours in petitioner's business, frequently averaging 14, 16 and 18 hours per day every day of the week including Sundays and holidays. Rupprecht lived above the funeral home on Chippewa Street and was subject to call at all hours of the day or night. The salaries and bonuses paid Beiderwieden and Rupprecht bore no direct relationship to their stockholdings in petitioner. The salaries and bonuses represented reasonable compensation for the personal services they actually rendered in each of the taxable years, and are deductible as ordinary and necessary expenses of petitioner's business. The funeral home at 3620 Chippewa Street was erected in 1931 at a cost of $44,244.04. The building was primarily designed as a funeral parlor. The requirements for a funeral parlor are "peculiar" and it is very hard to plan anything else in that type of building without excessive cost. The building is termed a frame brickveneer building. The basement, which is below sidewalk level, has concrete walls. The first floor is above sidewalk level, and the second floor has living quarters. The floors are of wood construction on wood joists supported *165 on steel columns and I-beams. The roof is of wood construction covered with composition paper with some tile on the front for decorative purposes. The structure carries an ordinary fire insurance rate with no credit for fireproof or semi-fireproof construction. The building could not be reconstructed today under the provisions of the building code of the City of St. Louis. On its return for the taxable years petitioner claimed an annual deduction for depreciation of $1,327.32, which was at the rate of 3 per cent per annum on the cost of the building. Respondent disallowed $540.46 of the depreciation claimed for each of the taxable years, determining the rate of depreciation at 2 per cent per annum. The funeral home at 3620 Chippewa Street had a useful life of 33 1/3 years. Opinion Section 23 (a) of the Internal Revenue Code authorizes the deduction of a reasonable allowance for salaries or other compensation for personal service actually rendered. Respondent denied a portion of the compensation paid each of the principal officers of petitioner upon the theory that excessive compensation was paid. The evidence shows and we have found as a fact that the *166 compensation paid Beiderwieden and Rupprecht was not excessive or unreasonable for the personal services actually rendered. They were paid under and pursuant to an established policy fixed some years prior to the salary years upon a salary and bonus basis. At the time the bonus arrangement was fixed the business would not pay a bonus. The officers earned the bonus by increasing petitioner's business. The bonus payments did not wipe out petitioner's earnings. Dividends have been paid regularly since 1936, ranging from seven to ten dollars per share each year during the five-year period 1939 to 1943, inclusive. Our findings indicate that profits resulted largely from the personal services rendered to petitioner's clientele and that such personal services were rendered primarily by Beiderwieden and Rupprecht, who worked long hours in petitioner's behalf. From this record we conclude that the compensation paid them for the personal services they rendered was reasonable. We find ample support for our conclusion, if any be needed, in the testimony of two witnesses produced by the petitioner. One had been an officer of the National Association of Funeral Directors for many years and had *167 operated a funeral business of his own since 1912. He stated that fair compensation for the executives of a funeral establishment, regardless of number, would be from 15 per cent to 35 per cent of the gross volume, with the smaller percentage applying to firms grossing a quarter of a million dollars and up annually. In his opinion the salaries and bonuses paid to petitioner's officers were below normal. The other witness was the secretary and counsel of the St. Louis Funeral Directors' Association. He was more familiar with the local situation and the time given and personal services performed by petitioner's officers than the first-mentioned witness. While his qualifications were not equal to the qualifications of the first witness he was equally convinced that the compensation paid petitioner's officers for their personal services in 1943 was very reasonable. In so holding we have considered respondent's requested findings and his argument that the yardstick used to measure the bonus payments is erroneous. On brief he states that the "principal disagreement between the parties herein arises out of petitioner's inclusion in its formula for computing bonuses of certain items which, *168 in the respondent's opinion, do not properly constitute 'gross sales'." The testimony refers to these items as cash advances refundable by clients and shows that such items related primarily to items that were not subject to tax under the Missouri Sales Tax. Respondent objects to the inclusion of these accommodation advances as a "sale" for bonus computation purposes. In our opinion the manner or method used by petitioner in determining the compensation of its two officers is not conclusive in deciding the issue. Our question is whether the compensation paid is reasonable. If it is, that ends the dispute, regardless of whether the formula used was erroneous or accurate. We are convinced that the compensation was reasonable, and have so determined. The other issue is the amount of annual depreciation petitioner is entitled to deduct on its building on Chippewa Street. Petitioner has depreciated the building at a 3 per cent rate; respondent has determined that the rate should be 2 per cent. Petitioner produced an architect with 30 years' experience who testified that in his opinion the building had a useful life of 20 to 25 or possibly 30 years. He testified that replacements to this *169 type of building would be very difficult because of the St. Louis building code. We understand from his testimony, and Rupprecht's, that the peculiar requirements for the building, the requirements of the local building code, plus the competition and advances in the undertaking business, combine to render this building, which is used for public assemblies, unfit for use at the end of the periods mentioned. We are of the opinion, and hold upon this record, that petitioner is entitled to depreciate its building on Chippewa Street upon the basis of a useful life of 33 1/3 years. Decision will be entered under Rule 50.